# UNITED STATES EX REL. SOUTHERN PACIFIC RAILROAD COMPANY *v.* LANE.

STATUTES; PROVISOS; PUBLIC LANDS; INDEMNITY LANDS; RIGHTS OF WAY.

1. A proviso must be interpreted in the light of the terms of the act to
   which it is attached. Its operation is usually confined to the clause
   or provision immediately preceding, but where necessary to give
   effect to the legislative intent it will be construed as applying to the
   entire act. A proviso, however, may contain legislation not directly
   related to the subject-matter of the act itself, thus enlarging the
   scope of the act, or even assuming the function of an independent
   enactment. (Citing *Hall's Safe Co.* v. *Herring-Hall-Marvin Safe Co.*
   31 App. D. C. 498.)

2. Under the proviso of the Act of Congress of August 30, 1890 (26 Stat.
   at L. 391, chap. 837), requiring that all patents for lands there-
   after taken up under any of the land laws of the United States
   should contain a reservation from the lands granted of a right of
   way for ditches or canals constructed by the authority of the United
   States, it was the duty of the Land Department of the Government,
   in issuing a patent to the Southern Pacific Railroad Company for
   indemnity lands under the Act of July 27, 1866 (14 Stat. at L. 292,
   chap. 278), which lands were selected by that company after the
   passage of the Act of 1890, to insert in the patent a reservation from
   the lands thereby granted of such a right of way.

No. 3010. Submitted December 5, 1916. Decided February 6, 1917.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia dismissing a petition for the writ of mandamus to compel the Secretary of the Interior to reissue a patent to certain lands.     *Affirmed.*

The Court in the opinion stated the facts as follows:

Relator, the Southern Pacific Railroad Company, appealed from a judgment of the supreme court of the District of Columbia denying a writ of mandamus to compel Franklin K. Lane, the Secretary of the Interior, and Clay Tallman, Commissioner of the General Land Office, to reissue a patent to certain indemnity lands to which it became entitled under the provisions of the Act of Congress of July 27, 1866 (14 Stat. at L. 292, chap. 278), entitled, "An Act Granting Lands to Aid in the Construction of a Railroad and Telegraph Line from the States of Missouri and Arkansas to the Pacific Coast."

Section 3 of the act provides: "That there be, and hereby is, granted to the Atlantic and Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores, over the route of said line of railway and its branches, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt, through the Territories of the United States, and ten alternate sections of land per mile on each side of said railroad whenever it passes through any State, and whenever, on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is designated by a plat thereof, filed in the office of the Commissioner of the General Land Office; and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of,

other lands shall be selected by said company in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections, and not including the reserved numbers."

Under the authority conferred by this act, relator company selected a large tract of land embraced within the indemnity limits, which selection was duly approved by the Secretary of the Interior and clear-listed for patent to relator. A patent was issued therefor, which contained the following reservation: "And there is reserved from the lands hereby granted, a right of way thereon for ditches or canals constructed by the authority of the United States." Relator is seeking to compel the reissue of the patent with this restriction eliminated.

*Mr. A. A. Hoehling, Jr., Mr. Stanton C. Peelle,* and *Mr. C. F. R. Ogliby* for the appellant:

1. A statutory contract was effected by the Act of July 27, 1866, and Joint Resolution of June 28, 1870. *Burke* v. *Southern P. R. Co.* 234 U. S. 669, 680; *Chicago, etc. R. Co.* 9 Land Dec. 468; *Kansas P. R. Co.* v. *Dunmeyer,* 113 U. S. 629; *Oregon & C. R. Co.* v. *United States,* 238 U. S. 393, 394; *Ryan* v. *Cen. P. R. Co.* 99 U. S. 382; *United States* v. *Southern P. R. Co.* 223 U. S. 560, 570; *Van Wyck* v. *Knevals,* 106 U. S. 340, 366; *Weyerhaeuser* v. *Hoyt,* 219 U. S. 380, 387.

2. Even if Congress had attempted to do so (but which it has not), the statutory contract (land grant) could not thereafter be modified or changed except by mutual consent of the contracting parties. *Bissell* v. *Penrose,* 8 How. 317; *Dartmouth College Case,* 4 Wheat. 518; *Doolan* v. *Carr,* 125 U. S. 618; *Lake Sup. & Co.* v. *Cunningham,* 155 U. S. 354, 373; *Lane* v. *Watts,* 234 U. S. 525, 540; *Reynolds* v. *Iron Silver Min. Co.* 116 U. S. 687; *Sinking Fund Cases,* 99 U. S. 700, 718, 719; *Steel* v. *Smelting Co.* 106 U. S. 447; *Stoddard* v. *Chambers,* 2 How. 284; *Wilcox* v. *Jackson,* 13 Pet. 498, 513; *Wright* v. *Roseberry,* 121 U. S. 488.

3. The proviso to the Sundry Civil Appropriation Act of August 30, 1890 (26 Stat. at L. 371, 391), and the contemporaneous and uniform construction, for a period of over twenty-one years, given to said proviso by the Department, charged it with the duty of executing said statute. Act of October 2, 1888. 25 Stat. at L. 505, 526, 527; Act of August 30, 1890, 26 Stat. at L. 371, 391; Departmental instructions, June 4, 1903, 32 Land Dec. 147; Departmental instructions, April 19, 1912, 42 Land Dec. 396; Endlich, Interpretation of Statutes, sec. 186; *Hewitt* v. *Schultz,* 180 U. S. 139, 157; *United States* v. *Alabama R. Co.* 142 U. S. 615, 621; *United States* v. *Hammers,* 221 U. S. 220, 228; *United States* v. *Johnston,* 124 U. S. 236, 253; *United States* v. *Moore,* 95 U. S. 760, 763.

4. The patent here in suit does not convey to appellant company the full measure of title intended and required by the land grant.

5. There is here involved nothing in the way of determination of facts, or the exercise of judgment or discretion by the respondents,—merely the ministerial duty and act of issuing patent to appellant company confirming to it, in appropriate form, the full measure and quality of title intended and required by the land grant aforesaid; as to which mandamus is the proper remedy. Act of July 27, 1866, 14 Stat. at L. 292; *Ballenger* v. *Frost,* 216 U. S. 240, 249; *Barney* v. *Dolph,* 97 U. S. 652, 656; *Garfield* v. *Goldsby,* 211 U. S. 249, 261, 262; *Hoglund* v. *Lane,* 44 App. D. C. 314; Joint Resolution of June 28, 1870, 16 Stat. at L. 382; U. S. Rev. Stat. sec. 453; *Simmons* v. *Wagner,* 101 U. S. 260, 261.

6. The return made by respondents to the rule to show cause issued herein set forth no legally sufficient defense, and the demurrer thereto was improperly overruled. Act of July 27, 1866, supra; Act of July 25, 1868, 15 Stat. at L. 187; Act of September 29, 1890, 26 Stat. at L. 496; *Chicago etc. R. Co.* 5 Land Dec. 511; Joint Resolution of June 28, 1870, supra; *New Orleans P. R. Co.* v. *United States,* 124 U. S. 124; Recitals in patent No. 161; *Southern P. R. Co.* 25 Land Dec. 223;

Statement showing land grants made by Congress, etc.; *Wisconsin, etc. R. Co.* 5 Land Dec. 81.

7. The judgment below should be reversed and the cause remanded, with directions to issue the writ of mandamus as prayed in the petition.

*Mr. Charles D. Mahaffie,* Solicitor for the Interior Department, and *Mr. C. Edward Wright,* Assistant Attorney, for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The Secretary of the Interior bases his authority for placing the reservation in the patent upon an Act of Congress of 1890, passed long subsequent to the date of the original grant and the location of the line of railroad under it, but prior to the selection of the indemnity lands in question. Undoubtedly, if, as contended by counsel for relator company, the same interest passed by the grant of these lands as to the odd-numbered sections within the primary belt, such interest would relate back to the date of the original grant, and the government could not, under the authority of the later act, insert in the patent a reservation such as was done in this instance. It is important, therefore, to determine the nature of the grant originally made of these indemnity lands. The odd-numbered sections of land within the primary belt or place limits Congress granted outright. The title became fixed upon the filing of a map definitely locating the line of railroad, and related back to the date of the grant. It amounted to a grant *in præsenti. Van Wyck v. Knevals,* 106 U. S. 360, 366, 27 L. ed. 201, 203, 1 Sup. Ct. Rep. 336; *Kansas P. R. Co.* v. *Dunmeyer,* 113 U. S. 629, 28 L. ed. 1122, 5 Sup. Ct. Rep. 566. As to these lands, the grantee acquired title by the terms of the act as soon as the location of the odd-numbered sections had been ascertained by survey. The act was self-executory upon identification. It contemplated present conditions and excluded all conditions not then existing. It contemplated existing private rights in portions of the lands

granted, and made provision for this contingency by conferring upon the grantee the power to select lands in lieu thereof from a designated strip adjacent thereto.

As to the indemnity lands, however, the act was not self-executory. All it fixed was the right and quantity of indemnity, not the quality, description, or location of the land that might be selected when at some future time the right should arise. Its operation depended upon a future contingency, in which, should it arise, the grantee became the moving party. The railroad company was given power to make selection of indemnity lands only defined as within certain limits in their then present condition. In *United States* v. *Southern P. R. Co.* 223 U. S. 565, 570, 56 L. ed. 553, 555, 32 Sup. Ct. Rep. 326, these indemnity railroad grants are defined as follows: "An indemnity grant, like the residuary clause in a will, contemplates the uncertain and looks to the future. What a railroad is to be indemnified for may be fixed as of the moment of the grant, but what it may elect when its right to indemnity is determined depends on the state of the lands selected at the moment of choice. Of course the railroad is limited in choosing by the terms of the indemnity grant, but the so-called grant is rather to be described as a power. Ordinarily no color of title is gained until the power is exercised."

It follows, therefore, that all the right conferred by the act as to the indemnity lands was the power of selection. It did not amount to a grant *in præsenti.* No interest was conveyed in any particular described lands, but only the power to select lands of even quantity within certain defined limits in their present condition, with all the restrictions, reservations, or easements which may have been imposed upon them by Congress. In other words, within the primary belt or place limits the grantee takes the land in the condition existing at the time of the location of the line of the railroad under the grant, and within the indemnity limits in the condition existing at the time of selection. The distinction is concisely stated in *Oregon & C. R. Co.* v. *United States,* 189 U. S. 103, 112, 47 L. ed. 726, 730, 23 Sup. Ct. Rep. 615, as follows: "Now, it has long been set-

tled that while a railroad company, after its definite location, acquires an interest in the odd-numbered sections within its place or granted limits,—which interest relates back to the date of the granting act,—the rule is otherwise as to lands within indemnity limits. As to lands of the latter class, the company acquires no interest in any specific sections until a selection is made with the approval of the Land Department; and then its right relates to the date of the selection. And nothing stands in the way of a disposition of indemnity lands, prior to selection, as Congress may choose to make."

It logically follows that if there is nothing to prevent the disposition by the government of the odd-numbered sections of land within the indemnity limits prior to selection, there is no limitation upon the right of Congress to impose upon such lands prior to selection the reservation of an easement for ditches and canals essential in carrying out a great public scheme for the development of that section of the country in which the greater portion of the public domain lies.

This brings us to the main question in the case—the right of the Secretary of the Interior to insert this reservation of easement for ditches and canals in the patent. The claim of authority is based upon a proviso to the Act of Congress of August 30, 1890 (26 Stat. at L. 391, chap. 837). The scope of the proviso may be understood more clearly by a brief reference to the legislation of which it forms a part. The Sundry Civil Act of October 2, 1888 (25 Stat. at L. 526, 527, chap. 1069, Comp. Stat. 1916, § 4696), contained an appropriation to enable the Geological Survey, under direction of the Secretary of the Interior, to conduct an investigation as to "the extent to which the arid region of the United States can be redeemed by irrigation, and the segregation of the irrigable lands in such arid region, and for the selection of sites for reservoirs and other hydraulic works necessary for the storage and utilization of water for irrigation and the prevention of floods and overflows," and to make a detailed report to Congress of the expenditure of the money appropriated to meet the expense of conducting the investigation, including "the amount used for actual survey

and engineer work in the field in locating sites for reservoirs."
In furtherance of this great reclamation scheme upon which
the Government was just embarking, the act provided that "all
lands which may hereafter be designated or selected by such
United States surveys for sites for reservoirs, ditches or canals
for irrigation purposes and all the lands made susceptible of
irrigation by such reservoirs, ditches or canals are from this
time henceforth hereby reserved from sale as the property of
the United States, and shall not be subject after the passage of
this act, to entry, settlement or occupation until further pro-
vided by law."

The Act of Congress of August 30, 1890, provided that "so
much of the Act of October second, eighteen hundred and
eighty-eight    *   *   *    as provides for the withdrawal of the
public lands from entry, occupation and settlement, is hereby
repealed, and all entries made or claims initiated in good faith
and valid but for said act, shall be recognized and may be per-
fected in the same manner as if said law had not been enacted,
except that reservoir sites heretofore located or selected shall
remain segregated and reserved from entry or settlement as
provided by said act, until otherwise provided by law, and
reservoir sites hereafter located or selected on public lands
shall in like manner be reserved from the date of the location
or selection thereof.   No person who shall after the pas-
sage of this act, enter upon any of the public lands with
a view to occupation, entry or settlement under any of the land
laws shall be permitted to acquire title to more than three hun-
dred and twenty acres in the aggregate, under all of said laws,
but this limitation shall not operate to curtail the right of any
person who has heretofore made entry or settlement on the pub-
lic lands, or whose occupation, entry or settlement, is validated
by this act: *Provided,* That in all patents for lands hereafter
taken up under any of the land laws of the United States or on
entries or claims validated by this act west of the one hundredth
meridian, it shall be expressed that there is reserved from the
lands in said patent described, a right of way thereon for ditches
or canals constructed by the authority of the United States."

It will be observed that this act, independent of the proviso, provides for two things. Without in any way changing the scope or object of the Act of 1888, in so far as power was vested thereunder to survey and establish reservoir sites and the location of canals or ditches as an initial step to the general reclamation scheme, it simply restored to entry and settlement the lands withdrawn under the prior act. The act also placed a limitation upon the amount of land which any person may acquire by occupation, entry, or settlement under any of the land laws, and also validated entries or settlements theretofore made. This limitation as to amount applied only to individual entrymen, and had no reference to railroad indemnity grants.

We now approach the construction of the proviso above quoted, upon which the Secretary of the Interior justifies the insertion in railroad indemnity patents of an easement reservation in favor of the United States for the construction of ditches and canals. The rule of statutory construction is familiar, that a proviso must be interpreted in the light of the terms of the act to which it is attached. Its operation is usually confined to the clause or provision immediately preceding, but where necessary to give effect to the legislative intent it will be construed as applying to the entire act. A proviso, however, may contain legislation not directly related to the subject-matter of the act itself, thus enlarging the scope of the act, or even assuming the function of an independent enactment. *Stephen* v. *Illinois C. R. Co.* 128 Ill. App. 99; *Hall's Safe Co.* v. *Herring-Hall-Marvin Safe Co.* 31 App. D. C. 498; *National Bank* v. *Cleveland,* 156 Fed. 251.

With these elementary rules in mind, it will be observed that the proviso in question relates to two classes of lands,—"entries or claims validated by this act," and "lands hereafter taken up under any of the land laws of the United States." To determine the intent of Congress in using the sweeping, all-inclusive language, descriptive of the latter classification, the general scope and subject-matter of the legislation of which this act forms a part must be considered. It was part of the initial legislation relating to a great project for conserving the flood waters and

reclaiming the arid lands of the United States susceptible of irrigation west of the one hundredth meridian. In the body of the act reservoir sites are reserved generally on public lands. This reservation, considering the scope of the legislation of which the act forms a part, and especially the unaffected provisions of the earlier act of which it is amendatory, would be almost ambiguous without the further reservation of an easement for the construction of ditches and canals. For why reserve from the public domain reservoir sites, and not the right of way for ditches and canals, the agencies essential to convey the stored flood waters from the reservoirs to the land?

Had the act embraced only general land laws, the contention of relator would not be without force; for the term "general land laws" relates to laws available to any member of the public possessing the requisite qualifications to take up and upon compliance with certain conditions acquire title to a portion of the public domain. But Congress used no qualifying word. The language is general,—"any of the land laws." True, the right of relator company to select the land in question is conferred by special act. It is not a general land law, but a special land act. No member of the public could acquire land under it, for it provides a method by which the particular corporation may under certain prescribed conditions and for a special purpose acquire title to the land. It will hardly be contended, however, that this is not a land law of the United States. Indeed, an act granting the right or power to select indemnity railroad lands has been expressly held to be a land law of the United States under the administrative jurisdiction of the Secretary of the Interior. *Wisconsin C. R. Co.* v. *Price County,* 133 U. S. 496, 511, 33 L. ed. 687, 694, 10 Sup. Ct. Rep. 341; *Weyerhaeuser* v. *Hoyl,* 219 U. S. 380, 388, 55 L. ed. 258, 261, 31 Sup. Ct. Rep. 300.

There is nothing exceptional in a railroad indemnity grant to distinguish it from the general purpose of the Act of 1890. The lands here involved, until selected, were a part of the public domain subject to be taken up by any qualified citizen under the general land laws of the United States. The power granted to any such citizen to acquire title to public lands is not

different from the power granted to a railroad upon the happening of a certain contingency to likewise acquire title to similar lands within a limited area. The power is the same, and there is no sound reason for reading into the statute a distinction as to conditions. The railroad company and the entryman must alike invoke the operation of a land law of the United States in the Land Department, the disposing agency of the government.

We think, therefore, that the broad language of the proviso embraces all public land west of the one hundredth meridian, subject at the date of the act to be taken up under any of the land laws of the United States, general or special, unless otherwise exempted by the terms of the law granting title to the lands or the power to acquire title, either by entry or selection. No such exemption exists here.

The judgment is affirmed, with costs.          *Affirmed.*